IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM LATHAM, JR. )
)
        Plaintiff, )
)
v. ) Civil Action No. 11-180J
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this _1st_ day of October, 2012, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his pending application for DIB on June 15, 2007, alleging a disability onset date of February 15, 1999, due to carpal tunnel syndrome, bad knees, back problems, impaired hearing, acid reflux disease, allergies, post-traumatic stress disorder and impaired vision.[1] Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on October 1, 2008, at which plaintiff appeared and testified. On October 20, 2008, the ALJ issued a decision finding that plaintiff is not disabled. On July 7, 2009, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 51 years old on his date last insured which is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §404.1563(d). Plaintiff has at least a high school education and has past relevant work experience as a power plant superintendent, which the ALJ classified as light,

---

[1] Plaintiff had filed a prior application for DIB which was denied by an ALJ decision dated August 21, 2001. Plaintiff did not appeal making the decision that plaintiff is not disabled as of August 21, 2001, administratively final. Also, because the ALJ found that plaintiff had acquired sufficient coverage to remain insured only through December 31, 2004, plaintiff must establish that he became disabled prior to that date. Accordingly, the relevant time period at issue in this case is August 21, 2001, to the "date last insured" of December 31, 2004, and plaintiff must show that he became disabled during that time period.

skilled work. He did not engage in any substantial gainful activity during the relevant time period of August 21, 2001, through December 31, 2004.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of history of carpal tunnel syndrome, history of knee surgery, shoulder and back pain, major depression and post-traumatic stress disorder, those impairments, alone or in combination, did not meet or equal the criteria of any of the impairments listed at 20 C.F.R., Part 404, Subpart P, Appendix 1.

The ALJ further found that although plaintiff's impairments preclude him from returning to his past relevant work, through the date last insured, plaintiff retained the residual functional capacity to perform <u>light</u> work with numerous restrictions recognizing the limiting effects of his impairments,[2] including, *inter alia*, that plaintiff must "avoid more than occasional

---

[2] Specifically, the ALJ found that, through the date last insured, plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that [he] had to avoid more than occasional standing and walking, 2 hours out of an 8 hour day, had to avoid kneeling, crawling, and climbing ladders, ropes and scaffolds, had to avoid more than occasional balancing, stooping, crouching, and climbing ramps and stairs, had to avoid prolonged writing and frequent keyboard work, was limited to no more than simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes, was limited to work with objects rather than people, was limited to no more than occasional interaction with supervisors, and had to avoid interaction with co-workers and the general public. (R. 23).

standing and walking, 2 hours out of an 8 hour day." (R. 23).

Taking into account these limiting effects, a vocational expert identified numerous categories of light jobs which plaintiff could perform based upon his age, education, work experience and residual functional capacity, including the light, unskilled jobs of routing clerk, inspector/packer and shoe packer, and, significantly, the sedentary, unskilled jobs of final assembler and product inspector. Relying on the vocational expert's testimony, the ALJ found that, through the date last insured, plaintiff was capable of making an adjustment to work which existed in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of the Act at any time during the relevant time period.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a

AO 72
(Rev. 8/82)

claimant is under a disability.[3] 20 C.F.R. §404.1520; <u>Newell v. Commissioner of Social Security</u>, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. <u>Id</u>.; <u>see</u> <u>Barnhart v. Thomas</u>, 124 S.Ct. 376 (2003).

Here, plaintiff raises several challenges to the ALJ's finding of not disabled: (1) the ALJ erred in finding that plaintiff has the residual factual capacity to perform "light work" where the ALJ further limited him to "occasional standing and walking, 2 hours out of an 8 hour day;" (2) because the ALJ's residual functional capacity finding limits plaintiff to, at most, sedentary work, the Medical-Vocational Guidelines, or "grids," dictate a finding of disabled; (3) the ALJ improperly relied on the vocational expert's testimony where the ALJ's hypothetical to the vocational expert was less restrictive than the residual functional capacity finding and where the ALJ failed to resolve conflicts between the jobs identified by the vocational expert and the descriptions of those jobs in the Dictionary of Occupational Titles ("DOT").

---

[3] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520. <u>See also</u> <u>Newell</u>, 347 F.3d at 545-46. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. <u>Plummer</u>, 186 F.2d at 432; 20 C.F.R. §404.1520a.

AO 72
(Rev. 8/82)

Upon review, the court is satisfied that the ALJ's residual functional capacity finding and his finding that through plaintiff's date last insured jobs existed in the national economy that plaintiff could have performed both are supported by substantial evidence.

At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §404.1520(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his or her impairments. 20 C.F.R. §404.1545(a); Fargnoli, 247 F.3d at 40.

Here, the ALJ found that:

> "through the date last insured, [plaintiff] had the residual factual capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except that [he] had to avoid more than occasional standing or walking, two hours out of an eight hour work day ...."

(R. 23).

Plaintiff's primary argument is that the ALJ's residual functional capacity finding that plaintiff is limited to stand or walking "two hours out of an eight-hour work day" is so restrictive as to effectively preclude him from performing even a limited range of light work as it is defined in the regulations. However, while the ALJ's finding precludes plaintiff from performing the standing or walking requirements of light work, the

definition of light work set forth in the regulations nevertheless allows for the performance of some jobs which involve sitting most of the time.

Initially, as plaintiff correctly notes, under the regulations and rulings, standing and walking "no more than two hours" is the maximum amount that an individual limited to sedentary work can do. Although a sedentary job is defined as one which involves sitting, the regulations recognize that "a certain amount of standing and walking are required occasionally in carrying out job duties." 20 C.F.R. §404.1567(a). SSR 83-10 states that "since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." See also SSR 96-9p ("the full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday").

Nevertheless, the restrictions set forth in the ALJ's residual functional capacity are compatible with the definition of light work set forth in the regulations. 20 C.F.R. §404.1567(b) defines "light work" as work which involves lifting no more than 20 pounds with frequent lifting of up to 10 pounds. The regulation further instructs that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of leg and arm controls."

SSR 83-10 expands upon the definition of light work. That ruling instructs that a job may be categorized as light when it "involves sitting most of the time <u>but</u> with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work, e.g., mattress sewing machine operator, motor-grader operator and road-roller operator."

Here, while the ALJ's residual functional capacity finding restricting plaintiff to only occasional standing or walking effectively precludes plaintiff from doing the standing or walking necessary for the full range of light work, it does not preclude him from performing the lifting requirements of light work, nor from performing sitting jobs that may require "some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." Importantly, the ALJ's residual functional capacity finding does not restrict plaintiff in the areas of pushing and pulling with the upper and lower extremities.

Because the restrictions set forth in the ALJ's residual functional capacity finding do not preclude plaintiff from performing any light work as it is defined in the regulations, this court is satisfied that the ALJ's residual functional capacity finding that plaintiff can perform less than the full range of light work, even with a limitation to no more than 2 hours of walking or standing, along with the other restrictions, is supported by the record.

Having concluded that the ALJ's finding that plaintiff has the residual functional capacity for light work with the

enumerated restrictions is supported by substantial evidence, the plaintiff's remaining arguments clearly are without merit.

Plaintiff's argument that the Medical-Vocational Guidelines, or "grids,"[4] dictate a finding of disabled in this case is predicated on plaintiff's contention that he is limited to, at most, sedentary work. Specifically, plaintiff contends that for an individual closely approaching advanced age, with a high school education, and skilled or semi-skilled prior work experience, and who retains a maximum sustained work capability limited to sedentary work, a finding of disabled is compelled under Grid Rule 201.14.

Grid Rule 201.14 is inapplicable here.[5] First, as already determined the ALJ's finding that plaintiff is limited to less than the full range of light work is supported by substantial evidence. Moreover, SSR 83-12 expressly provides that the grids do not direct a conclusion of "disabled" or "not disabled" where "an individual's RFC does not coincide with the exertional

---

[4] The grids set out various combinations of age, education, work experience and residual functional capacity and direct a finding of disabled or not disabled for each combination. See 20 C.F.R. Part 404, Subpart P, Appendix 2. When the four factors in a claimant's case correspond exactly with the four factors set forth in the grids, the ALJ must reach the result the grids reach. Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000); 20 C.F.R. §404.1569; 20 C.F.R., Part 404, Subpart P, Appendix 2, §200.00.

[5] Even assuming, arguendo, that plaintiff would be limited to no more than sedentary work, a finding of "disabled" only would be dictated by Rule 201.14 if plaintiff's education "does not provide for direct entry into skilled work" and plaintiff's previous work skills are not transferable. Here, the ALJ found that transferability of job skills was not material to the disability determination because he found that plaintiff has the RFC for light work with restrictions. (R. 28).

criteria of any one of the [exertional] ranges." The ruling also recognizes that where the exertional level falls between two rules which direct opposition conclusions, *i.e.*, "not disabled" at the higher exertional level and "disabled" at the lower exertional level, "and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as far as the sufficiency of the remaining occupational base to support a conclusion as to disability." Accordingly, vocational evidence is advisable for these types of situations. Id.

Here, the ALJ was faced with a situation where plaintiff's exertional limitations are "somewhere in the middle" between light and sedentary work. While the ALJ limited plaintiff to the standing and walking requirements of sedentary work, he placed no additional restrictions upon plaintiff which would preclude him from performing the other criteria of light work, such as lifting and pushing and pulling with the upper and lower extremities. In this situation, the ALJ properly relied on vocational expert testimony to find that there were jobs existing in significant numbers in the national economy that plaintiff could have performed on his date last insured in light of his age, education and residual functional capacity, rather than using the grids to dictate a finding of not disabled or disabled.[6]

---

[6] The court notes that plaintiff incorrectly represents in his argument that the ALJ "erred as a matter of law when he found [plaintiff] 'not disabled' by application of the Medical-Vocational Guidelines after concluding that he was able to perform 'light work.'"

AO 72
(Rev. 8/82)

Plaintiff's final arguments relate to the ALJ's reliance on the testimony of the vocational expert in finding plaintiff not disabled. Specifically, plaintiff argues that the ALJ improperly relied on the vocational expert's testimony at step 5 where: (1) the ALJ's hypothetical to the vocational expert was less restrictive than the ALJ's residual functional capacity finding; and, (2) the ALJ failed to resolve conflicts between the jobs identified by the vocational expert and the descriptions of those jobs in the Dictionary of Occupational Titles ("DOT"). These arguments are without merit.

At step 5, the ALJ relied upon the testimony of a vocational expert who identified numerous categories of jobs which plaintiff could have performed on his date last insured based upon his age, education, work experience and a residual functional capacity for light work with restrictions, including the light, unskilled jobs of routing clerk, inspector/packer and shoe packer, and, significantly, the sedentary, unskilled jobs of final assembler and product inspector.[7]  (R. 28-29).

---

This is not accurate. In his decision the ALJ noted that a finding of "not disabled" would be dictated by Grid Rule 202.14 if plaintiff had the RFC to perform the full range of light work. However, because the ALJ found that plaintiff's ability to perform the full range of light work was impeded by additional limitations, he did not use the grids to dictate a finding of not disabled, but properly relied upon the testimony of a vocational expert.

[7] The court notes that all of plaintiff's arguments relating to the vocational expert's testimony completely ignore the fact that, in addition to a number of light, unskilled jobs, the ALJ also identified the sedentary, unskilled jobs of final assembler and product inspector as jobs that existed in the national economy that plaintiff could have performed on his date last insured.

Plaintiff argues that the ALJ's hypothetical to the vocational expert, which restricted plaintiff to "occasional standing and walking", was inconsistent with the ALJ's residual functional capacity finding that plaintiff can "stand and walk for two hours per workday."

Although plaintiff is correct that SSR 83-10 defines "occasional" to mean "occurring very little to up to one third of the time," that ruling also explicitly states that "since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." Accordingly, there is not that much of a distinction between the ALJ's residual functional capacity finding that limited plaintiff to 2 hours of walking or standing, and the hypothetical to the vocational expert, which limited plaintiff to "occasional" standing or walking.

In any event, plaintiff's argument is predicated on the assumptions that: (1) plaintiff is limited to no more than sedentary work; and, (2) while an individual who is limited to standing or walking 1/3 of the workday may be able to perform the light jobs identified by the vocational expert, an individual limited to only 2 hours of standing and walking cannot. Even accepting plaintiff's argument that he is limited to sedentary work, however, whether plaintiff can stand and walk 1/3 of a work day or 2 hours of a workday is irrelevant because the vocational expert also identified 2 categories of sedentary jobs that

AO 72
(Rev. 8/82)

plaintiff could have performed with his residual functional capacity. Accordingly, the vocational expert identified jobs that even an individual with the more restrictive limitation of standing or walking 2 hours of a workday could perform, and the vocational expert's testimony in that regard constitutes substantial evidence in support of the ALJ's step 5 finding.

The court also finds unpersuasive plaintiff's argument that the ALJ failed to resolve purported "conflicts" between the jobs identified by the vocational expert and the descriptions of those jobs in the Dictionary of Occupational Titles ("DOT").[8] Specifically, he contends that the three light jobs identified by the vocational expert would require more than the occasional standing and walking permitted in the ALJ's residual functional capacity finding.

Again, however, while plaintiff argues that the vocational expert could "identify *only three jobs* that arguably fit the hypothetical" (plaintiff's emphasis), he completely ignores the fact that, in addition to those three <u>light</u> jobs, the ALJ <u>also</u> identified two categories of sedentary jobs that an individual with plaintiff's residual functional capacity could have performed. Accordingly, even if plaintiff were correct that there is some sort of conflict between the vocational expert's testimony and the DOT descriptions of the light jobs he identified, the

---

[8] SSR 00-4p requires an ALJ to identify and obtain a reasonable explanation for conflicts between occupational evidence provided by a vocational expert and information in the DOT and to explain in his decision how any conflict that has been identified was resolved.

additional identification of sedentary jobs that plaintiff could have performed is substantial evidence in support of the ALJ's step 5 finding.

Finally, to the extent plaintiff argues that there is a conflict between the vocational expert's testimony and the DOT because the ALJ limited plaintiff to "simple, routine, repetitive tasks" and all of the jobs identified by the vocational expert have a reasoning level of 2, this argument also is without merit. In Money v. Barnhart, 91 Fed.Appx. 210, 215 (3d Cir. 2004), the court expressly found that "working at reasoning level 2 would not contradict the mandate that [the claimant's] work be simple, routine and repetitive." Accordingly, there is no conflict between any of the jobs identified by the vocational expert and those jobs as listed in the DOT in regard to reasoning level.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
    521 Cedar Way
    Suite 200
    Oakmont, PA 15139

    Stephanie L. Haines
    Assistant U.S. Attorney
    319 Washington Street
    Room 224, Penn Traffic Building
    Johnstown, PA 15901

AO 72
(Rev. 8/82)